IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

GARY B.,[1]

    Plaintiff,

v.

    Civil Action 2:21-cv-4382
    Judge Sarah D. Morrison
    Magistrate Judge Chelsey M. Vascura

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## REPORT AND RECOMMENDATION

Plaintiff, Gary B. ("Plaintiff") brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Social Security Disability Insurance benefits ("DIB"), and Supplemental Security Income benefits ("SSI"). This matter is before the undersigned for a Report and Recommendation ("R&R") on Plaintiff's Statement of Errors (ECF No. 9), the Commissioner's Memorandum in Opposition (ECF No. 10), Plaintiff's Reply (ECF No. 11), and the administrative record (ECF No. 6). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that the Commissioner's decision be **AFFIRMED**.

    **I.    BACKGROUND**

Plaintiff filed DIB and SSI applications in September 2019, alleging that he had been disabled since May 30, 2019. (R. at 204–07, 208–16.) After Plaintiff's applications were denied

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

initially (R. at 73, 74, 75–84, 85–94), and on reconsideration (R. at 95, 96, 97–107, 108–18), a telephone hearing was held before Administrative Law Judge Mikel Lupisella (the "ALJ") on December 17, 2020. (R. at 36–72.) Plaintiff, represented by counsel, appeared and testified at that hearing. A vocational expert (the "VE") also appeared and testified. On March 3, 2021, the ALJ issued a partially favorable decision. (R. at 12–35.) On July 8, 2021, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (R. at 1–6.) Plaintiff seeks judicial review of the Commissioner's final decision. (ECF No. 1.)

In this action, Plaintiff alleges that the ALJ's residual functional capacity ("RFC")[2] determination is not supported by substantial evidence because the ALJ erred when performing a subjective symptom analysis (a.k.a. "credibility determination"). (ECF No. 9.) The Court concludes that Plaintiff's contention of error lacks merit.

## II. THE ALJ's DECISION

On March 3, 2021, the ALJ issued a partially favorable determination finding that Plaintiff was disabled within the meaning of the Social Security Act after the date he turned 55,[3] but that he was not disabled prior to that date. (R. at 12–35.) In the determination, the ALJ initially found that Plaintiff met the insured status requirements of the Social Security Act through December 31,

---

[2] A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

[3] Because the Commissioner did not include Plaintiff's birthdate in its briefing because of privacy concerns, the undersigned does the same.

2024. (R. at 19.) At step one of the sequential evaluation process,[4] the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged date of onset, May 30, 2019. (*Id.*) At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease; abdominal distention with colonic obstruction, status-post operations; hernia, status-post repair; major depressive disorder; and substance abuse disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

> Before proceeding to step four, the ALJ assessed Plaintiff's RFC as follows:
>
> After careful consideration of the entire record, [the ALJ] finds that since May 30, 2019, [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot climb ladders, ropes, or scaffolds. He can occasionally climb ramps and stairs. He can occasionally

---

[4] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

> 1. Is the claimant engaged in substantial gainful activity?
>
> 2. Does the claimant suffer from one or more severe impairments?
>
> 3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
>
> 4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
>
> 5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

> balance on narrow, slippery, or erratically moving surfaces. He can occasionally stoop, kneel, crouch, and crawl. He can have no exposure to hazards, such as unprotected heights or dangerous, moving machinery. He is able to understand, carry out, and remember simple instructions. He is limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e. no work on an assembly line). He is limited to low stress work, which is defined as involving only simple, work-related decisions and routine work place changes. He is limited to occasional interaction with co-workers and supervisors. He is limited to no transactional interaction with the public, i.e. sales, negotiation, customer service, or resolution of disputes. The work itself should deal with things rather than people throughout a typical workday. There should be no tandem tasks or teamwork required.

(R. at 21.)

At step four, the ALJ relied on testimony from the VE to find that since May 30, 2019, Plaintiff had been unable to perform his past relevant work as a maintenance mechanic, packager, inspector, or assembler/production. (R. at 25.) At step five, the ALJ determined that prior to the date Plaintiff turned 55, in light of his age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform, such as a garment sorter, router or folder. (R. at 26.) The ALJ, therefore, concluded that Plaintiff was not disabled prior to that date. (R. at 27.) On the date that Plaintiff turned 55, however, his age category changed. (*Id.*) As a result of that change to his work profile, there were no longer any jobs that existed in significant quantities in the national economy after that date. (*Id.*) Accordingly, the ALJ determined that Plaintiff was disabled after that date. (*Id.*)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

4

substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007).

## IV. ANALYSIS

As explained previously, Plaintiff alleges that the ALJ's RFC determination was not supported by substantial evidence because the ALJ erred when performing a subjective symptom analysis. (ECF No. 9 at PageID # 1612-22.) The undersigned finds that this claim lacks merit.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529; 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to

5

produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources including medical opinions. *Id*. In addition, there are seven factors set forth in SSR 16–3p[5] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3). Although an ALJ is not required to analyze all seven factors he should show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5,

---

[5] SSR 96-7p, 1996 WL 374186 (July 2, 1996), which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at * 11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

2021). Indeed, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

Here, the ALJ summarized Plaintiff's statements about the intensity, persistence, and limiting effects of his mental health impairments[6] as follows:

> [Plaintiff] alleges disability based on a combination of physical and mental impairments. . . He has a driver's license, but he has difficulty driving due to attention issues. He is divorced. He lives with two other individuals in a one-story house with a basement. His son lives with him. He receives $204 in food stamps per month and state provided health insurance. He has not worked since 2019. He received sick pay once he stopped working. . . . He stopped taking Duloxetine for his depression due to medication side effects. . . . [Plaintiff] alleges that his mental impairments have caused a suicidal ideation, depressed and irritable mood, racing thoughts, flattened affect, diminished interest in activities, and memory and concentration impairment. . . . (5E; Hearing).

(R. at 22.) The ALJ next found that those statements were not fully supported. He wrote:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision.

(*Id*.) The ALJ then discussed why the record did not fully support Plaintiff's statements. That discussion included a description of Plaintiff's mental health treatment history.

> [Plaintiff]'s major depressive disorder and substance abuse disorder were not disabling prior to the established onset date. In November 2019, [Plaintiff] stated that he had never been in a psychiatric hospital and never attempted suicide (15F/5). [Plaintiff] has received counseling services for depression and substance abuse treatment at Marion Area Counseling Center with Irene Johnson, MSW, from May 2019 through October 2020 (5F; 8F; 15F; 16F; 29F). [Plaintiff] has also undergone substance abuse treatment with Safe Rx Solutions (34F).

---

[6] Because Plaintiff's allegations pertain only to his mental impairments, the undersigned's discussion is limited to the same.

(*Id*.) The ALJ's discussion also included specific references to information from various treatment records:

> [Plaintiff] has reported that his mental health was stable with no changes or concerns at treatment visits in May and June 2020 (34F/16, 25). While [Plaintiff] has shown some impairment related symptoms like distractibility, poor insight and poor judgment, his mental status examination results have also been unremarkable. [Plaintiff]'s memory has been unremarkable (22F/9; 29F/31, 38; 30F/3, 14). His insight, judgment, thought processes, and thought content have been unremarkable (17F/11; 22F/9, 14; 31F/6). [Plaintiff] has consistently exhibited a normal mood and affect (3F/26, 57, 65, 155, 160, 164, 173, 179, 188, 198, 211, 220; 19F/16; 22F/9, 14). [Plaintiff] has been cooperative during treatment visits (34F/15). [Plaintiff] is consistently alert and oriented to person, place, and time (3F/26, 57, 65, 155, 160, 164, 173, 179, 188, 198, 211, 220; 17F/11; 19F/16; 22F/9; 30F/14; 30F/20 31F/6). In fact, [he] has denied suicidal ideation, auditory or visual hallucinations, delusions, and other impairment related symptoms (12F/8; 15F/5; 29F/31, 38).

(R. at 23.)

As this discussion demonstrates, the ALJ cited several record-based reasons why the record did not fully support Plaintiff's statements about the intensity, persistence, and limiting effects of his mental health impairments. First, the ALJ explained that Plaintiff reported that his mental health was stable with no changes or concerns at treatment visits in May and June 2020. (R. at 23.) Substantial evidence supports that explanation—Plaintiff indeed made such reports to providers on May 29, 2020, and June 12, 2020. (R. at 1479, 1488.) In addition, the ALJ noted that Plaintiff's memory was unremarkable and citied four examinations findings to that effect. (R. at 23.) The record also substantially supports that explanation. On November 12, 2019, a consultative examiner noted that although Plaintiff's performance on memory was a little lower than expected for a high school graduate with strong skills in the machine trades (R. at 927), Plaintiff nevertheless had no major difficulties with his long-term memory (R. at 926). An examination on December 13, 2019, also found that Plaintiff's memory was fair. (R. at 941.) Examinations on April 28, May 26, June 24, September 10, October 22, and November 23, 2020,

8

all found that Plaintiff's memory was normal. (R. at 1176, 1181, 1375, 1369, 1364, 1461.) Similarly, examinations on April 23, and September 3, 2020, found that Plaintiff's memory was grossly intact with no major deficits. (R. at 1349, 1356.)

The ALJ also discounted Plaintiff's subjective symptoms because his insight, judgment, thought processes, and thought content were sometimes unremarkable. (R. at 23.) Again, the record substantially supports that explanation. At times, examiners indicated that it was difficult to assess Plaintiff's insight or judgment because he jumped from topic-to-topic and fixated on issues related to his physical pain management. (R. at 1349.) At other times, examiners found that Plaintiff's insight and judgment were poor during visits when he, for example, indicated that he was unwilling to stop using cannabis (R. at 941), or took medications prescribed to others because his medications ran out (R. at 1181). But an April 28, 2020 examination found that Plaintiff's insight and judgment were normal. (R. at 1176.) Plaintiff's judgment was normal on October 30, 2020. (R. at 1389.) On November 3, 2020, under "insight and judgment," it was noted that Plaintiff had a fair understanding of his mental health diagnosis and treatment and was willing to participate in treatment. (R. at 1356.) One week later, an examination again found that Plaintiff's insight and judgment were normal. (R. at 1370.) Plaintiff's thought processes were also coherent during examinations on August 15, August 30, and November 11, 2019, and on January 1, February 19, April 23, and September 3, 2020 (R. at 748, 755, 947, 954, 260, 1349, 1356). Plaintiff had no bizarre thoughts during a consultative examination on November 12, 2019 (R. at 926), and his thought content was normal on October 30, 2020 (R. at 1389). Therefore, the ALJ did not err by finding that there was evidence that Plaintiff's insight, judgment, thought processes, and thought content were unremarkable despite contrary findings.

In addition, the ALJ found the record did not fully support Plaintiff's subjective complaints because he consistently exhibited a normal mood and affect. (R. at 23.) Substantial evidence supports that explanation— examinations routinely found that Plaintiff had normal mood and affect (R. at 445, 453, 548, 561, 567, 576, 586, 599, 608, 613, 1451), or appropriate mood and affect (R. at 543, 1102, 1107, 1176, 1181, 1370, 1364, 1461). The ALJ also noted that Plaintiff was cooperative during treatment visits. The record also generally supports that explanation. Although Plaintiff was "rude" to front desk staff on one occasion (R. at 1343), and verbally abusive on two occasions in February 2020 (R. at 1103, 1109), he calmed down and became fairly cooperative after "much talking" and medication administration during one of those February visits (R. at 1103). And examiners found that Plaintiff was cooperative on numerous other occasions. (R. at 457, 492, 548, 560, 567, 576, 586, 599, 608, 613, 627, 1106, 1484, 1506.) The ALJ also explained that Plaintiff was consistently alert and oriented to person, place, and time, which accurately reflects the record evidence. (*See e.g.*, R. at 439, 748, 755, 901, 916, 840, 947, 954, 960, 1106, 1349, 1356.)

Last, the ALJ noted that Plaintiff denied suicidal ideation, auditory or visual hallucinations, or delusions. (R. at 23.) And indeed, although Plaintiff told a consultative examiner he had occasional suicidal thoughts (R. at 924), Plaintiff also denied suicidal ideations on other occasions (R. at 1349, 1356.) Likewise, Plaintiff reported that he occasionally thought he saw someone sitting in a chair even though no one was there (R. at 777, 924), but he also denied auditory or visual hallucinations (R. at 1349, 1356). Examinations also found that Plaintiff had no signs of hallucinations or delusions. (R. at 926, 941, 1920.) In short, the ALJ offered a number of record-based reasons for finding that Plaintiff's symptoms were not fully supported. Accordingly, the ALJ did not err when performing a subjective symptom analysis.

Plaintiff, however, raises several challenges. First, Plaintiff points to two instances where the ALJ wrongly cited a record. Plaintiff points out that when the ALJ explained that Plaintiff's subjective symptoms were undermined, in part, by records reflecting that his insight, judgment, thought processes, and thought content were unremarkable, the ALJ wrongly cited a record reflecting an examination that found that Plaintiff's insight and judgment were poor. (ECF No. 9, PageID # 1614.) As already explained, however, the ALJ did not err by finding that there was record evidence that Plaintiff's insight, judgment, thought processes, and thought content were unremarkable given that some records reflected normal findings. (*See e.g.*, R. at 1176, 1370.) Moreover, in the subjective symptom analysis, the ALJ explicitly noted that although Plaintiff "had shown some impairment related symptoms like distractibility, *poor insight and poor judgment*, his mental status examination results have also been unremarkable." (R. at 23.) (emphasis added). Therefore, the incorrect citation does not suggest that the ALJ was unaware of records indicating that Plaintiff's insight and judgment were poor. Rather, it appears that the ALJ was fully aware of and weighed conflicting finding about Plaintiff's insight and judgment. Similarly, Plaintiff points out that when the ALJ noted that Plaintiff denied suicidal ideation, auditory or visual hallucinations, he cited the consultative examiner's report, which reflected that Plaintiff reported that he occasionally thought about suicide and occasionally saw someone in a chair. (ECF No. 9, PageID # 1614.) When summarizing Plaintiff's subjective symptoms, however, the ALJ accurately acknowledged that Plaintiff "allege[d] that his mental impairments have caused a suicidal ideation" (R. at 22), before later stating that the record also reflected that Plaintiff denied having such ideations (R. at 23). Again, it does not appear that the ALJ ignored or missed information about such ideations but that he weighed conflicting findings about them. In

11

any event, these two citation errors do not impair this Court's ability to review the ALJ's determinations, which are, as already explained, amply supported by other record evidence.

Plaintiff also complains that the evidence cited by the ALJ in the subjective symptom analysis is "nearly exclusively" from "other" medical providers who did not provide mental health services and that the ALJ did not discuss evidence from Marion Counseling Center. (ECF No. 9, PageID # 1617, 1619.) The ALJ did not, however, err by discussing examination findings from other medical providers. When evaluating the "intensity, persistence, and limiting effects of an individual's symptoms," an ALJ must consider all available evidence from medical and nonmedical sources. §§ 404.1529(c)(1); 416.929(c)(1). Nor does it appear that the ALJ ignored the records from Marion Counseling Center. In the subjective symptom analysis, the ALJ initially described Plaintiff's mental health treatment history and explicitly noted that Plaintiff had "received counseling services for depression and substance abuse treatment at Marion Area Counseling Center with Irene Johnson, MSW, from May 2019 through October 2020" and that he had "undergone substance abuse treatment with Safe Rx Solutions," thereby demonstrating that he was aware of these records. (R. at 22.)

Moreover, the record reflects that Plaintiff first sought treatment at Marion Counseling Center on September 23, 2019, after he was referred there by his pain specialist because of suspected substance abuse issues, which Plaintiff had denied. (R. at 778, 1347, 1920.) On March 23, 2020, Plaintiff requested Valium or Xanax, which the Center could not provide. (R. at 1333.) He was again reminded that the Center did not provide those drugs on April 26, 2020. (R. at 1335.) After therapeutic behavioral services became involved with Plaintiff's case, more significant substance abuse concerns were unveiled, and it was noted that he was prescribed Zubsolv for opioid addiction by a pain clinic. (R. at 1920.) Accordingly, Plaintiff was transferred

to a mental health/substance abuse counselor on June 4, 2020. (*Id.*) Plaintiff was advised at that time that his substance abuse might be complicating his mental status and his ability to benefit from treatment, and he agreed to work on only taking prescribed medications. (*Id.*) On August 13, 2020, Plaintiff was manic in his presentation (R. at 1341), and on September 1, 2020, he was rude to front desk staff (R. at 1343). Nevertheless, at both visits, it was noted that Plaintiff was making progress, and Plaintiff reported that overall things were going "ok" and that he had no concerns during the September visit. (R. at 1341, 1343.) During a September 3, 2020 medication evaluation, Plaintiff had serious somatic complaints, but he was bright, pleasant, and able to participate in meaningful dialog. (R. at 1354.) Plaintiff reported significant anxiety and sleeping problems but that his mood, which had been up and down, was "ok" (*Id.*) Although he was restless and had poor eye contact, Plaintiff was also alert and oriented to person, place, time, and situation; his mood was "pretty good" that day; and he had a full affect. (R. at 1356.) With regard to concentration, Plaintiff was distractible but easily engaged. (*Id.*) He talked incessantly, but his language was appropriate for his age and education; he had logical and coherent thought processes and appropriate associations; and his memory was grossly intact with no apparent deficits. (*Id.*) Plaintiff was diagnosed with major depressive disorder recurrent, improving. (R. at 1385.) And the plan was to start Cymbalta and Remeron. (R. at 1359.) At an appointment on October 20, 2020, it was noted again that progress was being made. (R. at 1345.)

Plaintiff additionally complains that the ALJ failed to discuss the consultative examiner's report in the subjective symptom analysis. (ECF No. 9, PageID # 1618.)  The ALJ, however, discussed and evaluated[7] the opinions in that report elsewhere in the determination as follows:

> Ronald McIntire, Ph.D., opined that the claimant has limitations in his ability to manage the stress of everyday work life, and understand, remember and follow

---

[7] Plaintiff does not challenge the ALJ's evaluation of the consultative examiner's opinions.

13

>basic instructions. Dr. McIntire opined that the claimant had a "fairly good" ability to maintain attention and concentration to perform simple, repetitive tasks once he has oriented himself to the task (15F/10). These opinions are partially persuasive. They are consistent with the claimant's lack of inpatient psychiatric hospitalizations during the relevant period, treatment observations, generally unremarkable mental status examination findings, and the claimant's activities of daily living. While the claimant has shown some symptoms, he has consistently been alert and oriented. He has exhibited an unremarkable memory. The claimant has been able to handle his own financial matters. He can keep up with his own appointments. He stated that he could get along with his coworkers. He has denied impairment related symptoms (3F/26, 57, 65, 155, 160, 164, 173, 179, 188, 198, 211, 220; 12F/8; 15F/5; 17F/11; 19F/16; 22F/9; 29F/31, 38; 30F/14; 30F/20 31F/6).

(R. at 24.) It is, therefore, clear that the ALJ considered the consultative examiner's report even if he did not refer to it in the subjective symptom analysis.

More notably, it appears that the ALJ's RFC determination was consistent with or even more restrictive than the consultative examiner's opinion. The consultative examiner opined that Plaintiff's ability to understand, remember, and follow basic instructions was limited, and that he could read very brief instructions but was unable to follow multi-step instructions without the need for reminders. (R. at 928.) In the RFC determination, the ALJ determined that Plaintiff was able understand, carry out, and remember only simple instructions. (R. at 21.) The consultative examiner also found that Plaintiff's ability to maintain attention and concentration to perform simple repetitive tasks was fairly good once he was oriented to task. (R. at 928.) The ALJ determined that Plaintiff was "limited to simple and routine tasks performed in a work environment free of fast-paced production requirements (i.e., no work on an assembly line)." (R. at 21.) The consultative examiner determined that Plaintiff's ability to get along with coworkers is fairly good, but that he might have difficulties communicating with others. (R. at 929.) The ALJ likewise limited Plaintiff to occasional interactions with co-workers and supervisors; no transactional interactions with the public; work that dealt with things instead of people; and no tandem tasks or teamwork. (R. at 21.) Last, the consultative examiner opined that Plaintiff' ability

14

to manage stress of everyday work life was limited. (R. at 928.) The ALJ limited Plaintiff to low stress work, defined as involving only simple, work-related decisions, and routine workplace changes. (R. at 21.) In short, the undersigned does not find that the ALJ committed reversible error by failing to discuss the consultative examiner's report in the subjective symptom analysis. The ALJ assessed the consultative examiner's report elsewhere and appears to have incorporated the limitations that the consultative examiner opined.

Last, Plaintiff appears to allege that the ALJ engaged in cherry picking. (ECF No. 9, PageID # 1613–14.) Specifically, Plaintiff point to instances where the ALJ cited a record for an unremarkable finding about a particular symptom even though the same record contained information suggesting that one of Plaintiff's other symptoms was more serious. It is well established, however, that an ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254 (6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)); *see also Dykes ex rel. Brymer v. Barnhart*, 112 F. App'x 463, 467–68 (6th Cir. 2004) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." (citations omitted)). The Sixth Circuit has further explained that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (*quoting Loral Defense Systems–Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999) (citations and internal quotation marks omitted)).

Moreover, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014); *see also White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009) ("[W]e see little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence."). Such is the case here. The ALJ explicitly noted, for instance, that although Plaintiff had "shown some impairment related symptoms *like* distractibility, poor insight and poor judgment, his mental status examination results have also been unremarkable." (R. at 23.) (emphasis added). The ALJ, therefore, acknowledged evidence of Plaintiff's impairment-related symptoms that included, but were not limited to, distractibility, poor insight, and poor judgment. But it was the ALJ's job to weigh that evidence against evidence of unremarkable findings. The ALJ did so. The undersigned finds that the ALJ did not commit reversible error when he engaged in that process.

For all these reasons, the undersigned finds that the ALJ did not commit reversible error when he assessed Plaintiff's subjective symptoms and that Plaintiff's allegation lack merit.

## V.  RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination.

## VI.  PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made.

Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the R&R.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

>/s/ *Chelsey M. Vascura*
>CHELSEY M. VASCURA
>UNITED STATES MAGISTRATE JUDGE